USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/26/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AL HAJJ ASH SHEIKH
SIRAJ ABDUL AZIZ MUHAMMAD,

            Plaintiff,

-against-

CORRECTION OFFICER DOUGLAS,

            Defendant.

---

No. 15-cv-0935 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Al Hajj Ash Sheikh Siraj Abdul Aziz Muhammad brings this action *pro se* against Defendant Correction Officer Douglas relating to Defendant's order that Plaintiff remove his beard while incarcerated at Downstate Correctional Facility ("Downstate") and Plaintiff's subsequent keeplock confinement.[1] Before the Court is Defendant's motion to dismiss (ECF No. 23). For the following reasons, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the § 1983 Complaint filed by Plaintiff (ECF No. 2) and Plaintiff's opposition papers (ECF No. 22).[2] Defendant submitted additional materials in support of the motion to dismiss, including an affidavit of Jeffrey Hale (Assistant Director of the Inmate Grievance Program at the New York State Department of Corrections and Community Supervision ("DOCCS")) and a printout record of Plaintiff's grievances. (ECF No. 25.) On a

---

[1] "Keeplock confinement is 'a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates.'" *Saulter v. Hanslmaier*, No. 94-cv-6855 (JFK), 1997 WL 177887, at *1 (S.D.N.Y. Apr. 14, 1997) (quoting *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989) (citing N.Y. Comp. Codes R. & Regs. tit. 7, Section 251-1.6 (1988)).

[2] Given Plaintiff's *pro se* status, the Court accepts as true the facts alleged in Plaintiff's opposition papers. *Mahon v. McCall*, No. 13-cv-2076 (RA), 2014 WL 4589855, at *1 (S.D.N.Y. Sept. 15, 2014) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62–64 (2d Cir. 2014); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014). The Court may also consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Id.* The materials submitted by Defendants are neither incorporated into the Complaint nor are they documents of which the Court can take judicial notice. Therefore, the Court cannot consider these materials without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d) (where "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56."). Because Plaintiff has not been given an opportunity to respond to a motion for summary judgment, the Court will not convert the motion and will only consider the allegations in the Complaint and Plaintiff's opposition papers. *See Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)) ("a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings," so long as "the court give[s] 'sufficient notice to an opposing party and an opportunity for that party to respond'.").

On June 26, 2012, Plaintiff was received into custody by DOCCS at Downstate. (Compl. at III.B.) Defendant was the officer assigned to reception that day. (*Id.*) Plaintiff informed Defendant that in his property bag he possessed a court order from the New York State Supreme Court exempting Plaintiff from complying with DOCCS Directive 4914, which requires an inmate to shave his face (the "State Court Order"). (*Id.* at IV.) Plaintiff showed Defendant the State Court Order, but Defendant ordered Plaintiff to have his beard removed. (*Id.*) Plaintiff

refused to sit in the barber chair, was charged with disobeying a direct order, and was placed in keeplock until his hearing.  (*Id*.)  Plaintiff was placed in keeplock for 10 days.  (Plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Opp."), ECF No. 22 at 4.)  At his hearing, Plaintiff presented the hearing officer with the State Court Order and also pointed out that the version of DOCCS Directive 4914 in the reception area at Downstate was outdated.  (Compl. at IV.)  Thereafter, the hearing officer dismissed Plaintiff's ticket.  (*Id*.)

Plaintiff contends that as a result of being confined in keeplock, he suffered "psychological deprivation from religious services"; was "subjected to cold meals"; and was segregated from the general prison population during recreation time.  (*Id*. at IV.A.)  He also suffered physical injuries to his right knee after falling off his bed.  (*Id*.)

Plaintiff alleges that he informed the Inmate Grievance Resolution Committee ("IGRC") at Downstate about Defendant's conduct.  (*Id*. at II.B.)  In particular, Plaintiff alleges he mailed a formal grievance to the IGRC.  (Pl.'s Opp. at 4-5, Ex. G.)  Plaintiff later wrote to the IGRC at Downstate regarding the disposition of the grievance, and on September 17, 2012, Plaintiff received a response from the IGRC that it did not have a record of receiving his grievance and directed Plaintiff to file a grievance at the facility in which he was currently housed (Gouverneur Correctional Facility).  (Pl.'s Opp., Ex. G.)  Plaintiff further alleges that he contacted the Central Office Review Committee ("CORC") about the underlying incident, but the CORC informed Plaintiff that it had no record of his grievance.  (Compl. at C.1.)  Plaintiff also alleges that he sent a copy of the State Court Order to the CORC.  (Pl.'s Opp. at 5.)

## STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y.*

*Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### I. Plaintiff Did Not Exhaust His Grievance

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09-cv-9199 (PGG), 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez*, 582 F.3d at 305) (internal quotation marks and citations omitted). A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007); *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004). The defendants bear the burden of demonstrating that the plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). "[A] motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if 'nonexhaustion is clear from the face of the complaint.'" *Lopez v. Cipolini*, No. 14-cv-2441 (KMK), 2015 WL 5732076, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *Lovick v. Schriro*, No. 12-cv-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation

marks omitted)).  *See also Lee v. O'Harer*, No. 13-cv-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-cv-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

A person detained or incarcerated at a DOCCS facility must exhaust all of the steps of the DOC Inmate Grievance Resolution Program ("IGRP").  *See Robinson v. Hens chel*, No. 10-cv-6212 (PGG), 2014 WL 1257287, at *10 (S.D.N.Y. March 26, 2014) ("the PLRA requires complete exhaustion in accordance with the administrative procedures within [DOCCS]") (internal quotation marks and citations omitted).  The IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGRC, (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the CORC.  *See Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7 (1999)).

Defendant argues that Plaintiff failed to exhaust his grievance because he did not appeal to the CORC.  Plaintiff, meanwhile, alleges that he informed the IGRC at Downstate about Defendant's conduct, but the IGRC told Plaintiff it never received a copy of his grievance.  (Compl. at II.B.)  Plaintiff further clarifies in his opposition brief that on June 27, 2012, Plaintiff mailed a formal grievance to the IGRC.  (Pl.'s Opp. at 4-5, Ex. G.)  Thereafter, Plaintiff wrote to the IGRC at Downstate regarding the disposition of the grievance, and on September 17, 2012,

Plaintiff received a response from the IGRC that it did not have a record of receiving his grievance and directed Plaintiff to file a grievance at the facility in which he was currently housed (Gouverneur Correctional Facility). (Pl.'s Opp., Ex. G.) Plaintiff contacted the CORC about the underlying incident, but the CORC informed Plaintiff that it had no record of his grievance. (Compl. at C.1.) In his opposition brief, Plaintiff argues that he sent a copy of the State Court Order to the CORC. (Pl.'s Opp. at 5.)

Though Plaintiff appears to have attempted to seek redress for his grievance with the IGRC and the CORC, case law is clear that "[a]n inmate must fully comply with the procedural rules of the local administrative agency." *Harris v. Gunsett*, No. 12-cv-3578 (PAC) (JCF), 2013 WL 3816590, at *1 (S.D.N.Y. July 22, 2013) (citing *Espinal*, 558 F.3d at 124). Compliance requires an inmate to appeal properly to the CORC, even if the inmate receives no response from the IGRC at the first stage of exhaustion. *See Torres v. Carry*, 691 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) (citing *Arce v. Keane*, No. 01-cv-2648, 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."); *Hernandez v. Coffey*, No. 99-cv-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) ("where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC")). It is apparent from the face of the Complaint that Plaintiff did not properly exhaust his grievance. Even assuming Plaintiff did file a grievance with the IGRC, as he alleges, Plaintiff failed to appeal that grievance to the CORC. Indeed, Plaintiff was on notice that he had not properly appealed his grievance to the CORC as Plaintiff affirmatively alleges that the CORC informed him that it did not have a copy of the grievance. (Compl. at C.1.)

## II.  Plaintiff Is Exempt From Exhaustion

The Second Circuit has recognized three situations in which a plaintiff is not required to satisfy the PLRA exhaustion requirement. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).[3]  *See also Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012), *aff'd*, 2013 WL 3214625 (2d Cir. 2013).  The failure to exhaust administrative remedies may be excused or Plaintiff's claim may be deemed exhausted: (1) when administrative remedies are not available to the prisoner, (2) when the defendants waive the defense by failing to raise or preserve it, or acted in such a manner that they are estopped from raising it, or (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement. *Hemphill*, 380 F.3d at 686.

The test for determining the availability of administrative remedies is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill*, 380 F.3d at 688 (internal citation and quotation omitted).  A remedy must afford "'the possibility of some relief for the action complained of.'" *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  "In some circumstances, a defendant's behavior will render an administrative remedy unavailable." *Sloane*, 2006 WL 3096031 at *6 (citing *Hemphill*, 380 F.3d at 687).

In *Cruz v. Lee*, this Court determined that the plaintiff was excused from exhausting his grievance regarding retaliation because the administrative grievance process appeared to be unavailable to the plaintiff.  No. 14-cv-4870 (NSR) (JCM), 2016 WL 1060330, at *5 (S.D.N.Y.

---

[3] While the Second Circuit has left unresolved the continuing vitality of the *Hemphill* exceptions in light of the Supreme Court's ruling in *Woodford v. Ngo*, *Hemphill* remains good law, and the Court must therefore consider whether any exceptions apply to Plaintiff's failure to exhaust. *See Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) (recognizing that *Woodford* called the latter two *Hemphill* exceptions into question but declining to resolve the issue). *But see Messa v. Goord*, 652 F.3d 305, 309–10 (2d Cir. 2011) (treating the *Hemphill* exemptions as good law and finding that a prisoner is not entitled to a jury trial on the issue of whether he has asserted a valid excuse for non-exhaustion).

Mar. 15, 2016). In that case, the plaintiff alleged that he filed the grievance with the IGRC but was later informed that the grievance could not be located in the IGRC system. *Id*. Thereafter, the plaintiff wrote to his counselor, mental health doctor, and the prison superintendent in an attempt to appeal his grievance. *Id*. This Court concluded:

> Accepting all allegations as true, it is clear that Plaintiff attempted to grieve his protective custody claim. When Plaintiff reasonably believed that his grievances were not being filed, he tried to grieve his complaints by writing letters of appeal. Further, in light of the fact that Plaintiff has filed numerous grievances in the past, he is clearly familiar with the grievance process and aware of the steps he must take before availing himself of the Court's remedies. Therefore, the administrative grievance process may have been unavailable to Plaintiff, and the Court cannot dismiss his retaliation/denial of protection claim for failure to exhaust.

*Id*. In the instant case, Plaintiff alleges that he filed a grievance with the IGRC but was later informed that the IGRC never received his grievance. (Pl.'s Opp. at 4-5, Ex. G.) Subsequently, Plaintiff sought redress from the CORC by writing to the CORC about his grievance and forwarding a copy of the court order. (Compl. at C.1.) Plaintiff alleges that the IGRC and CORC "BAMBOOZELED" [sic] him. (Pl.'s Opp. at 5.) Plaintiff appears to assert that despite his good faith efforts to comply with the grievance requirements, the IGRC and the CORC engaged in some sort of deception to prevent him from properly exhausting his grievance. Like the plaintiff in *Cruz*, Plaintiff has filed other grievances and appears to be familiar with the grievance process. Construing the allegations in the light most favorable to Plaintiff, and mindful of the leeway courts must provide to *pro se* plaintiffs in their pleadings, the Court concludes that Plaintiff is exempt from the strict exhaustion requirements because the administrative grievance process may have been unavailable to Plaintiff.[4]

---

[4] Having concluded that the administrative grievance process may have been unavailable to Plaintiff, the Court need not address the other two grounds for exemption from exhaustion—estoppel and special circumstances.

### III. Plaintiff Fails to State a First Amendment Claim

The Court next turns to the merits of Plaintiff's First Amendment claim—that Directive 4914 violates Plaintiff's Muslim faith. "The First Amendment provides that, 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .'" *Ross v. Coughlin*, 669 F. Supp. 1235, 1238 (S.D.N.Y. 1987) (quoting U.S. Const. amend. I.) "The free exercise clause is made applicable to the states by the Fourteenth Amendment." *Ross*, 669 F. Supp. at 1238 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303–07 (1940)). Where an inmate alleges that a prison regulation impinges upon his or her First Amendment right to free exercise of religion, such regulation "passes constitutional muster '"if it is reasonably related to legitimate penological interests."'" *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))).

"Courts must evaluate four factors in making the reasonableness determination: whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." *Salahuddin*, 467 F.3d at 274 (citing *Turner*, 482 U.S. at 90–91). "The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274–75 (citation omitted). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that

these [articulated] concerns were irrational." *Id*. at 275 (internal quotations and citations omitted).

Even assuming Plaintiff can establish that Directive 4914 substantially burdens his sincerely held religious beliefs, various courts in this Circuit have previously determined that Directive 4914 is reasonably related to legitimate penological interests. *See Singh v. Goord*, 520 F. Supp. 2d 487, 507 (S.D.N.Y. 2007) ("numerous courts have held that Directive 4914's initial shave requirement serves a legitimate penological interest in maintaining prison security and a record of prisoners' appearances in case of escape.") (citing *Young v. Goord*, No. 01-cv-626, 2005 WL 562756, at *2 (E.D.N.Y. Mar. 10, 2005), *aff'd*, 192 F. App'x 31 (2d Cir. 2006) ("The legitimacy of the penological interest in policing the facial hair of inmates is clear. Corrections officials specifically, and law enforcement generally, must be able to accurately identify present, former and escaped prisoners by their physical appearance."); *Solomon v. Chin*, 96-cv-2619, 1998 WL 473953, at *3 (S.D.N.Y. Aug. 10, 1998); *Ross*, 669 F. Supp. at 1240–41; *Phillips v. Coughlin*, 586 F. Supp. 1281 (S.D.N.Y. 1984)). *See also Benjamin v. Coughlin*, 905 F.2d 571, 575, n.3 (2d Cir. 1990) (citing *Fromer v. Scully*, 874 F.2d 69, 76 (2d Cir. 1989)). Accordingly, Plaintiff cannot state a First Amendment claim on the basis of Directive 4914, and the Court dismisses this claim.

### IV.    Plaintiff Cannot State a Claim Based on the Violation of Directive 4914

The Complaint appears to assert a claim premised upon Defendant's violation of Direction 4914. (Compl. at IV.) However, "the law is settled that the failure to follow a [DOCCS] Directive or prison regulation does not give rise to a federal constitutional claim." *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (citing *Hyman v. Holder* No. 96-cv-7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001)). While such a theory of liability

"may give rise to state law claims, [it does not] constitute [a] due process violation[] of a constitutional nature." *Rivera*, 232 F. Supp. 2d at 123. "Thus, a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations . . . ; rather, in order to prevail on a § 1983 claim, the allegations asserted must constitute violations of constitutional due process standards." *Id*. (citation omitted). Therefore, the Court dismisses Plaintiff's claim that Defendant violated Directive 4914.

## V.     Plaintiff Fails to State a Claim Arising From Pre-Hearing Keeplock

Finally, the Court turns to Plaintiff's allegation that his pre-hearing confinement in keeplock resulted in "psychological deprivation from religious services"; "cold meals"; and "segregated recreation." (Compl. at IV.A.). "In *Sandin,* the Supreme Court altered the landscape of prisoner due process, constructing a new approach for analyzing claims of prisoners who are segregated from the prison population." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998). "To establish a due process violation, it is necessary to prove that the state has created a protected liberty interest and that the process due was denied." *Id*. "To identify a protectable liberty interest under the *Sandin* framework, prisoners must establish that a given restraint imposes an '*atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Id*. (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (emphasis added)). The Court must undertake a "detailed, fact-intensive inquir[y] into the scope of the prisoner's alleged deprivation" to determine whether a keeplock confinement constitutes an atypical and significant hardship. *Sales v. Barizone*, No. 03-cv-6691 (RJH), 2004 WL 2781752, at *6 (S.D.N.Y. Dec. 2, 2004) (citing *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000)). Courts consider "factors such as (1) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and (2) the duration of the disciplinary segregation imposed

compared to discretionary confinement." *Sales*, 2004 WL 2781752, at *6 (internal quotations and citations omitted).

In the present case, the allegations regarding Plaintiff's keeplock confinement do not constitute atypical and significant hardship. *See Saulter*, 1997 WL 177887, at *2 (collecting cases) ("Courts in this District have routinely held that the New York prison system's practice of placing prisoners in keeplock confinement does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life."). First, a confinement for a period of 10 days is neither atypical nor significant. *See Pampalone v. Young*, No. 95-cv-2348 (SHS), 1996 WL 511569, at *3 (S.D.N.Y. Aug. 7, 1996) (collecting cases) ("[T]he decisions in the Second circuit are unanimous that keeplock or SHU confinement of 30 days or less in New York prisons is *not* an 'atypical or significant hardship' under *Sandin*."). Additionally, the allegations regarding the conditions of Plaintiff's keeplock confinement do not rise to the level of atypical and undue hardship. With respect to Plaintiff's argument that his keeplock confinement imposed a hardship on his ability to observe his religious practices, the Second Circuit has held that "[c]onfinement in keeplock does not deprive prisoners of [the right to participate in congregate religious services.]" *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.), *cert denied*, 492 U.S. 909 (1989)). As for cold meals and segregated recreation, these conditions of keeplock are hardly severe, particularly given the short time frame of Plaintiff's keeplock confinement.[5] Accordingly, Plaintiff's allegations fail as a matter of law to state a claim under the Due Process Clause of the Fourteenth Amendment.

---

[5] Additionally, Plaintiff's allegation regarding his injury resulting from falling off the bed in keeplock is not a condition of keeplock. (Compl. at IV.A.)

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's complaint is dismissed. The Court respectfully directs the Clerk to terminate the motion at ECF No. 23 and close the case.

Dated: May 25, 2016
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge